UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,     :     S6 05 Cr. 109 (RMB)
                              :
                              :
         v.                   :     DECISION AND ORDER
                              :
                              :
HAROLD BRUNSON,               :
                              :
         Defendant.           :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/06

## I. Background

On April 20, 2006, Harold Brunson ("Defendant" or "Brunson") was convicted by a jury of one count of conspiracy to distribute heroin following a three day trial. By motion, dated May 11, 2006, ("Defendant's Motion"), and reply, dated July 6, 2006, ("Defendant's Reply"), the Defendant moved for a judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29 ("Fed. R. Crim. P. 29" or "Rule 29") on the ground of insufficient evidence. By response, dated June 22, 2006, ("Government's Response"), the Government opposed the Defendant's Motion.

## II. Legal Standard

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal," Fed. R. Crim. P. 29 (c), if the Court first determines that the evidence was insufficient to sustain a conviction. The Court is required to view the evidence "in the light most favorable to the government" drawing all reasonable inferences in the Government's favor. United States

v. Autouri, 212 F.3d 105, 114 (2d Cir. 2000). The Court may not assess the credibility of witnesses and "must uphold the jury's verdict if…'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

"With respect to whether there is sufficient evidence of a defendant's intent to participate in the conspiracy with knowledge of its unlawful objectives, there are two separate inquiries: the prosecution must show a) that the defendant had some knowledge of the unlawful object of the conspiracy, and b) that the defendant intended to engage in the unlawful scheme." United States v. Martinez-Sandoval, 2003 WL 1442454, *4 (S.D.N.Y. 2003).

## III. Analysis

Defendant concedes: "The evidence introduced at trial . . . is certainly sufficient to establish a number of substantive offenses, including that Mr. [Harold] Brama ("Brama") and Mr. [Mory] Diakite ("Diakite") conspired to distribute heroin, that Mr. Brama distributed heroin to Mr. Brunson, and that Mr. Brunson possessed heroin with intent to distribute it." Defendant's Motion at 5. Defendant argues, however, that: "There is no evidence that Mr. Brunson agreed with Mr. Brama to distribute heroin, or that Mr. Brunson was a part of Mr. Brama's heroin distribution organization, or that Mr. Brama had any interest in how Mr. Brunson disposed of the narcotics he purchased from Mr. Brama. The evidence at most showed that Mr. Brunson was involved in several arms length purchases of heroin from Mr. Brama, and that Mr. Brunson subsequently distributed the heroin he purchased." Defendant's Reply at 2.[1] The Government

---

[1] Defendant also argues: "the fact that Mr. Brunson was a customer of Mr. Brama's (even a repeat customer) who distributed some of the heroin that he purchased from Mr. Brama does not establish that Mr. Brama and Mr. Brunson had a shared objective to distribute heroin to Mr.

responds that "there were a number of facts that take this case out of the 'typical buy-sell scenario'", Government's Response at 2, including: (i) "evidence that Brunson and Brama pre-arranged meetings for the purpose of Brama supplying heroin to Brunson, particularly with respect to the heroin deal that occurred on January 15, 2005." Id. at 3; (ii) "evidence that Brama was supplying Brunson with distribution quantities of heroin." Id.; (iii) "Brunson and Brama had an ongoing relationship of trust and confidence that existed for sometime before their meeting on January 15, 2005 and which they expected to continue after the drug deal which took place on January 15, 2005." Id. at 4 [See, e.g., "next time" was "gonna be soon"; "let me know when you are ready to come"; telephone conversation recorded on January 17, 2005 wherein Brunson complained that he was "short" and Brama stated "whatever is short" he would "take care of"]; and (iv) "in addition to circumstantial evidence showing a conspiratorial relationship between Brunson and Brama . . . there was also direct evidence that Brunson and Brama were acting in concert in distributing heroin." Id. at 5. [See, e.g., Brunson's statement to law enforcement that "he would not give up the big man, he would stay true to the game."].

"A conspiracy to distribute narcotics does not arise just because there is a narcotics transaction, for the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." United States v. Valencia, 226 F. Supp. 2d 503, 510 (S.D.N.Y. 2002). "The purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy." Id. (internal citation omitted). "The circumstances are different, however, when wholesale

---

Brunson's customers." Defendant's Motion at 7.

quantities are involved. The Second Circuit has frequently noted that one who deals in large quantities of narcotics may be presumed to know that he is a part of a venture which extends beyond his individual participation." Id. (internal citations and quotations omitted)

The Court finds that the evidence in the record supports the jury verdict and that, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in the Government's favor, any rational trier of fact could have found (and, in this case, the jury did find) the Defendant guilty of conspiracy to distribute and possess with intent to distribute heroin beyond a reasonable doubt. See e.g., United States v. Valencia, 226 F. Supp. 2d 503 (S.D.N.Y. 2002).

In addition to evidence cited by the Defendant and the Government in their respective briefs, the Court concludes that the following evidence adduced at trial supports the jury verdict against Mr. Brunson:

1- Hary Brama, who lived in New York, purchased and sold large quantities of heroin;

2- Brama's nephew, Mory Diakite, served as a source of supply for Brama;

3- Mory Diakite sold Brama 100 grams of heroin on each of two occasions (on or about January 8, 2005 and on or about January 15, 2005) at a cost of $6,000.00 on each occasion. See Transcript of proceedings held on April 18, 2006 and April 19, 2006 at 81, 94, 98, 100, 101;

4- Diakite made a $500.00 profit on each of these two sales of heroin to Brama. See Transcript of proceedings held on April 18, 2006 at 82;

5- Brama and Brunson had an ongoing relationship as evidenced by the frequency and content of conversations between them;

6- Between January 2003 and February 2005, there were more than 150 telephone calls between

telephones registered in the names of Brama and Brunson;

7- Statements by Brunson to Brama included:

a- "the product was okay" but "the count was off", which the jury could reasonably infer related to the quality and quantity of the heroin Brama provided to Brunson on January 15, 2005. See Government Exhibit 48;

b- "I think the next time I see you - I'm gonna bring something, uh, to be sure I don't have that problem anymore . . . sometimes trust is good, but to know something is better", which the jury could reasonably infer meant that, while Brunson generally trusted Brama, sometimes that "trust" was not enough and that he might bring his own scale next time to weigh the quantity of heroin. Id.;

c- "next time . . .it gonna be soon, too, because I think something fixin' to shake, rattle and roll from it", from which the jury could reasonably infer that the next drug deal between Brunson and Brama would occur in the near future. Id.;

d- "it's all good, because, I'm, I got business about me. You know?", from which the jury could reasonably infer that Brunson and Brama's relationship was intact and that he (Brunson) would continue to engage in future drug transactions with Brama. Id.;

8- Brunson, who lived in Georgia, made arrangements to travel to New York to meet with Brama on January 15, 2005 regarding a heroin transaction which the jury could reasonably infer based upon phone calls between Brunson and Brama on January 13, 2005 and January 14, 2005 and a phone call between Brama and Diakite on January 13, 2005. For example, during a phone conversation between Brama and Diakite on January 13, 2005, "Hary [Brama] told me [Diakite] that the guy [presumably Brunson] had called him [Brama] and told him [Brama] he [presumably

Brunson] would come on the Saturday [January 15, 2005]." See Transcript of proceedings held on April 19, 2006 at 100); Brama also told Diakite that his [Brama's] customer was from another state and his [Brama's] customer was coming from out of state to New York on Saturday [January 15, 2005]. See Transcript of proceedings held on April 18, 2006 and April 19, 2006 at 81-83, 94-102;

9- The jury could reasonably infer that Brunson arrived in New York on January 15, 2005 as evidenced by the following:

a- During telephone conversations between Brama and Diakite held on January 15, 2005, "He [Brama] told me [Diakite] that the guy had come . . . He [Brama] told me [Diakite] to rush because the guy was waiting." See Transcript of proceedings held on April 19, 2006 at 101 and 104;

b- During a telephone conversation between Brama and Brunson on January 28, 2005, Brunson said to Brama: "I came in there [presumably New York] two weeks ago, man. . . And then I called you and told you it was short. . . After I got back home [presumably to Georgia] I called you and told you that." See Government Exhibit 52.

10- With regard to the sale of heroin from Diakite to Brama, on January 15, 2005, Brama told Diakite to divide the 100 grams into two equal parts of 50 grams because Brama was unsure how much his (Brama's) customer, which the jury could infer was Brunson, wanted. See Transcript of proceedings held on April 19, 2006 at 101-102;

11- Brama took 50 grams of heroin and told Diakite he had sold the 50 grams, which the jury could infer was sold to Brunson. (During a telephone conversation between Brama and Diakite on January 15, 2005, "He [Brama] called me [Diakite] to tell me that he had already done the

sale and he had my money." Id. at 105.);

12- At the time of Brunson's arrest, February 8, 2005, law enforcement officials seized a box of (bindles of) glassine envelopes well as a hand scale (of the kind used for packaging and weighing narcotics for sale) from the master bedroom and living room of Brunson's home (in Georgia). Id. at 147-151;

13- Law enforcement officials also seized one glassine with heroin from Brunson's pocket on February 8, 2005, which contained mannitol or "cut", a substance which is added to a controlled substance such as heroin to increase the weight of the controlled substance. Id. at 168.

14- When Brunson was asked by law enforcement officials if he wanted to cooperate and identify who his source of supply of heroin was and who he distributes heroin to, Brunson stated that "he couldn't or would not give up the big man, he would stay true to the game", which the jury could infer meant that Brunson would not give up his coconspirator, Brama. Id. at 146;

15- After Brama was arrested, his vehicles were searched on February 11, 2005. Law enforcement officials recovered approximately $100,000 in United States Currency; money counters, electronic scales and a jar of marijuana. Id. at 124, 126-128;

There can be little or no doubt that the jury focused upon the charged conspiracy in reaching its verdict. The jury in this case was specifically instructed, among other things, that "a conspiracy to distribute narcotics does not arise just because there is a narcotics transaction, because the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." See Transcript of proceedings held on April 20, 2006 at 259-260. The Court also stated: "the issue that you must decide is whether the [D]efendant, Harold Brunson, participated in a conspiracy to distribute heroin with knowledge of its unlawful purpose and with

the intent to aid in the accomplishment of its unlawful objective. In sum, the [D]efendant, with an understanding of the unlawful nature of the conspiracy, must have intentionally engaged, advised or assisted in the conspiracy for the purpose of furthering an illegal undertaking. A defendant thereby becomes a knowing and willing participant in the unlawful agreement; that is to say, a conspirator." Id. at 260. The jury was further instructed: "Often the only evidence that is available [with respect] to the existence of a conspiracy is that of disconnected acts on the part of the alleged individual co-conspirators. When taken all together and considered as a whole, however, that conduct may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an expressed agreement." Id. at 255.

## IV. Conclusion

In sum, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in the Government's favor, the Court finds that a reasonable jury could find - - as the jury in this case did find - - all the essential elements of the conspiracy charged in the Indictment beyond a reasonable doubt. Defendant's motion pursuant to Rule 29 is respectfully denied.

Sentencing is scheduled for October 16, 2006 at 4:00 p.m. Sentencing submissions, if any, are due on October 2, 2006 and responses, if any, are due on October 10, 2006.

Dated: New York, New York
August 9, 2006

_____
RICHARD M. BERMAN, U.S.D.J.